FILED

2016 AUG 18  P 1: 52

US DISTRICT COURT
HARTFORD CT

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| James Boster | |
|     167 Hamilton Ave.<br>    Princeton, NJ 08540-3857, | Civil Action No. 16 - CV - 1412 - JCH |
|         Plaintiff, | |
|         v. | |
| University of Connecticut,<br>Pamela Erickson,<br>Sally McBrearty,<br>Jeff Seemann,<br>Brandi Simonsen,<br>Jeremy Teitelbaum,<br>Jaci VanHeest,<br>Nancy Wallach<br>Nicholas Yorio | |
|         Defendants. | |

## COMPLAINT

Plaintiff James Boster ("Plaintiff") brings this Complaint for defamation against University of

Connecticut, Pamela Erickson, Sally McBrearty, Jeff Seemann, Brandi Simonsen, Jeremy Teitelbaum,

Jaci VanHeest, and Nancy Wallach ("Defendants") and states the following:

## JURISDICTION AND VENUE

1. This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1)

   because the Plaintiff and Defendants are citizens of different states and the amount in

   controversy exceeds $75,000.

2. This Court enjoys personal jurisdiction over the Defendants because the false and defamatory

statements made by Defendants were published in the State of Connecticut, and the Defendants were and remain residents of the State of Connecticut.

3. This Court enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion of the events that gave rise to Plaintiff's claims transpired in the State of Connecticut, including the publication or republication of the defamatory falsehoods and the damage to Plaintiff's reputation.

## PARTIES

1. Plaintiff, James Boster, was Professor of Anthropology at the University of Connecticut. Professor Boster resides in the State of New Jersey.

2. Defendant, University of Connecticut is a public University of the State of Connecticut.

3. Pamela Erickson is Professor and Head of the Department of Anthropology at the University of Connecticut.

4. Sally McBrearty is Professor and former Head of the Department of Anthropology at the University of Connecticut.

5. Jeff Seemann is Vice President for Research at the University of Connecticut.

6. Brandi Simonsen is Associate Professor at the Neag School of Education and Vice-Chair of the Institutional Review Board at the University of Connecticut

7. Jeremy Teitelbaum is Professor of the Department of Mathematics and Dean of the College of Liberal Arts and Sciences at the University of Connecticut.

8. Jaci VanHeest is Associate Professor at the Neag School of Education and Chair of the Institutional Review Board at the University of Connecticut.

9. Nancy Wallach was the former Assistant Vice President for Research Compliance and member of the Institutional Review Board at the University of Connecticut.

<u>STATEMENT OF FACTS</u>

10. On August 8, 2014, Szymon Wichary sent to Sally McBrearty, my wife Cornelia Dayton, and

me two defamatory letters. The first defamatory letter was follows:


James Boster,


Do you think you are the only person who can get angry?


You are a small manipulative bastard, bordering on psychopathy, or beyond that border, with

poor anger control, and you are an alcoholic. And I want you to know that I know that.


Do you want to play the 'counting game', quantifying who helped whom and how many times?

If so, then do I need to remind you how many times I helped you in establishing contacts in

Poland, and that I translated questionnaires for you. And do you remember that when you injured

your leg and had to be transported to hospital and spend a day in the emergency room, I assisted

you? How much does it count? We (me and my wife) do not owe you anything.


Do you want to play 'blackmail games', threatening my wife that you will destroy her

reputation? For what, for the fact that she refused to fill in your questionnaire? If you want to

play these games, then perhaps I should make public that you had love affairs while staying in

Poland and that you were officially accused of sexual abuse by a student of Jagiellonian

University, while you taught courses there?

Do you think that acting out of proportion and disguising your anger in a thin veil of an intellectual email conversation will hide your intentions of harming and threatening other people?

We do not want to meet you. Stop sending these manipulative, threatening emails. Stop stalking.

Simply speaking, fuck off.

If you continue to escalate and send these manipulative, threatening emails I will inform the police.

I am cc'ing this email and the whole email conversation to your wife and your employer, so that they know what you are up to when 'doing field research in Poland'.

11. The second defamatory email letter from Szymon Wichary to Sally McBrearty, my wife Cornelia Dayton, and me was as follows:

Dear Prof. Sally Mc Brearty

Dear Cornelia

I decided to write to you as a reaction to James Bosters' manipulative emails and verbal abuse directed towards my wife. His recent actions and words as a response to her not wanting to fill in his research questionnaire are completely out of proportion and we feel threatened by his words, actions and mindset. I will forward you the emails that he sent to my wife and me, which we find manipulative and we feel threatened by them. They fulfill the definition of stalking.

Sincerely

Szymon Wichary

12. On August 10, 2014, Sally McBrearty forwarded both of the Wichary's defamatory email letters to Pamela Erickson.

13. Subsequently, Sally McBrearty and Pamela Erickson exchanged several emails expressing their malice and prejudicial opinions of James Boster, including one Sally McBrearty wrote on August 12, 2014 to Pamela Erickson stating "it will be great if this can have an end put to it at last," referring to my employment at the University of Connecticut.  Another, on August 13, 2014,  by Pamela Erickson to Sally McBrearty expressed regret that James Boster might be beyond the jurisdiction of the IRB and also stated:

"The larger issue is that he escapes formal accusations of sexual misconduct although colleagues know and no one seems to be willing to come forth but some student in Poland."

It should be noted that not only were there no formal accusations of sexual misconduct against the Plaintiff at the University of Connecticut, there were none in Poland either, save for the false accusation in Wichary's defamatory email.

14. Pamela Erickson subsequently forwarded Wichary's defamatory emails to Jeremy Teitelbaum and Nancy Wallach.

15. Jeremy Teitelbaum elicited further defamation from Anna Ziomkiewicz (Szymon Wichary's wife) and passed that defamation on to Nancy Wallach.

16. Nancy Wallach forwarded Wichary's defamatory emails to Jaci Van Heest and Brandi Simonsen.

17. Jaci Van Heest and Brandi Simonsen subsequently shared Wichary's defamatory emails with the

members of the University of Connecticut Institutional Review Board.

18. The defamations spread about me were malicious and injurious in themselves.

   1. They indicated that Plaintiff had engaged in criminal activity (sexual abuse).

   2. They indicated that Plaintiff had a "loathsome" condition (alcoholism).

   3. They indicated that Plaintiff was engaged in sexual misconduct (extra marital affairs).

   4. They indicated that Plaintiff had engaged in behavior incompatible with the proper conduct of his business, trade or profession (had engaged in research misconduct).

19. Jeremy Teitelbaum instructed Nancy Wallach that Plaintiff was guilty of research misconduct. It should be noted that Jeremy Teitelbaum is a mathematician, has not engaged in any sort of empirical research, and is not qualified nor permitted to either render a judgment of research misconduct or interfere with the deliberations of the IRB.

20. The defamation caused members of the Institutional Review Board to render a false judgement that Plaintiff had engaged in research misconduct. Internal email exchanges within the membership of the board reveal that any appearance they gave of having an impartial process was for show only. They ignored statements that Plaintiff made on his own behalf and those made by his accuser that would have exculpated him.

21. Defendants may not use defense of qualified privilege because it can be proved that the defamation was motivated by malice and was malicious per se.

22. As a result of the hostile actions taken by Defendants, Plaintiff was terminated from his position as professor of Anthropology at the University of Connecticut.

23. The defamatory statements individually and collectively are false, and were false when made. The Defendants knew or should have known that these statements were false.

24. Defendants made the Statements with actual malice and wrongful and willful intent to injure Plaintiff. The Statements were made with reckless disregard for their truth or falsity or with

knowledge of their falsity and with wanton and willful disregard of the reputation and rights of the Plaintiff.

25. Defendants lacked reasonable grounds for making the Statements.


COUNT I- DEFAMATION PER SE

26. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-24 appearing in this Complaint. The Statements, individually and collectively, referred to herein have caused, are causing, and will cause Plaintiff to suffer injury to his professional standing and to his reputation and good name; and, they have held and will continue to hold Plaintiff up to public scandal and ridicule. The Statements were calculated to, and do, expose Plaintiff to public scorn, hatred, and ridicule. By such published Statements, Defendants did injure the Plaintiff's reputation within his professional circles and in the community at large. The publication of the Statements proximately caused general and special damages to the Plaintiff. The Statements have adversely impacted Plaintiff's scholarly credibility, and opportunities for writing, teaching, and speaking. The Statements have damaged Plaintiff's professional standing in the academic community. The Statements have proximately caused Plaintiff emotional and psychological trauma and suffering which is continuing.


PRAYER FOR RELIEF

27. Plaintiff demands judgment against Defendants, jointly and severally, as follows: (i) for compensatory damages in the amount of $10 million ($10,000,000) on Count I; (ii) punitive damages in the amount of $10 million ($2,000,000) on Count I; (iii) both pre-judgment and post-judgment interest; and, (iv) such other and further relief as this Court finds just and equitable.

Plaintiff - James Boster    James Bost
8/16/2016   originally sent and received
8/10/2016   cell phone # (860) 786-2424